UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :          **MEMORANDUM AND ORDER**
            - against -                                     :
                                                            :
                                                            :
NEIL KRAMER, ISADORE A. USEROWITZ                           :
a/k/a "Arthur Userowitz," HAROLD WEISBERG,                  :          1:06-cr-200-ENV-CLP
HAMAD ALI a/k/a "Ahmed Jeran," HAMOOD                       :
ZOKARI, NAGEEB ALDAYLAM, MOHAMMED                           :
ALGAHIM a/k/a "Mohamed Kaid," ABDULLAH                      :
ALHABABI, SALEM AL-MERDAI, ABDO                             :
ALWASIA, MOHSEN HUDYIH and FATEH                            :
NAGI SALEH,                                                 :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------X

VITALIANO, D.J.

        Defendant Abdullah Alhababi moves to dismiss criminal charges, brought on March 27, 2006,

that he collected extensions of credit by extortionate means, 18 U.S.C. § 894(a), and conspired to do so,

18 U.S.C. § 371.  The only specific act relating to Alhababi charged in the now-pending superseding

indictment is that "[o]n June 3, 2005, the defendant Abdullah Alhababi made a telephone call to

defendant Neil Kramer in which they discussed Kramer's possession of a debtor's Immigration and

Naturalization Service Permanent Resident Alien Card, commonly referred to as a 'green card,' as

ensuring the debtor's repayment of a loan issued by Kramer and Alhababi."  The United States asserts

that the withholding of immigration and travel documents by a lender as collateral on a loan may support

a conviction under 18 U.S.C. § 894(a)(1) – a criminal statute that carries up to a 20-year term of

imprisonment, and which provides that "[w]hoever knowingly participates in any way, or conspires to

do so, in the use of any extortionate means to collect or attempt to collect any extension of credit . . . shall

be fined under this title or imprisoned not more than 20 years, or both." The United States's position is baseless.

First, § 894(a)(1) makes clear that "a defendant may only be convicted . . . if he knowingly plays some role in the extortion itself, but not if he merely performs acts that he knows will facilitate a debtor's repayment of a debt being collected by extortionate means." United States v. Scotti, 47 F.3d 1237, 1246 (2d Cir. 1995). Here, the indictment does not allude to or even remotely suggest any conduct that could conceivably support a colorable allegation that Alhababi knowingly participated in an extortionate act to collect a debt or that he conspired to do so.

Second, § 894(a)(1) applies to the extortionate collection of debt, as opposed to the extortionate extension of credit, which is an offense proscribed by a separate statute, 18 U.S.C. § 892(a). The legislative history of the two sections shows that the Congress intended to create two separate and distinct offenses:

> EXTORTIONATE COLLECTION: Not everyone who falls into the clutches of a loan shark is necessarily aware at the outset of the nature of the transaction into which he has entered. Moreover, cases will arise where the use of extortionate means of collection can be demonstrated even though it cannot be shown that a bilateral understanding that such would be the case existed at the outset. Section 894(a) covers these situations by making it a criminal offense to collect an indebtedness by extortionate means, regardless of how the indebtedness arose . . . .

H.R. Conf. Rep. No. 1397, at 2028 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2021, 2028. "[W]here defendants used extortionate means in the extension of a loan but did not use any extortionate means, explicit or implicit, in the collection of the loan-convictions under § 894 cannot stand." United States v. Lore, 4 F. Supp. 2d 352, 358 (D.N.J. 1998). The Lore court went on to observe that

> neither DiSalvo [n]or Smith, nor any other case known to this Court, has taken an act that formed a violation of § 892 and used the same act as the sole basis for a § 894 violation. The very fact that Congress has enacted

two separate statutes – one criminalizing extortionate extension of a loan and one criminalizing extortionate collection of a loan – is meaningful. Under the government's broad interpretation of § 894, virtually any time a defendant violates § 892 by extending a loan using extortionate means he or she would also violate § 894 without any additional conduct other than receiving repayments. Indeed, the government claims it has met its burden under both § 892 and § 894 at the moment of repayment because Britt's threat carried over from each offense. This interpretation, however, is unrealistic because every loan agreement contemplates repayment by definition, and the only circumstances under which convictions under both § 892 and § 894 would not be present are those where an extortionate loan is extended but where the creditor chooses not to collect.

Lore, 4 F. Supp. 2d at 357-58.[1]

Third, § 894(a)(1) applies to "extortionate means," statutorily defined as "any means which involves the use, or an express or implicit threat of use, of violence **or other criminal means** to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(7) (emphasis added). Second Circuit caselaw makes clear, however, that despite the statutory inclusion of "other criminal means," not all criminal means constitute the type of coercion that could support a conviction under section 894(a)(1). See United States v. Pacione, 738 F.2d 567, 569 (2d Cir. 1984).

In Pacione, an attorney was accused of making two usurious loans on which he took a mortgage and then a trust deed as security. Id. at 568. Both the mortgage and trust deed fraudulently misstated the loans' terms to disguise their usurious nature. Id. The debtors understood that nonpayment would result in the trust deed being recorded, and that is precisely what happened when they failed to repay their debt. Id. The District Court dismissed the indictment, concluding that "[f]iling a usurious mortgage may be illegal, but it is not 'criminal' in the sense that the word is used in [the extortionate credit transactions] statute." Id. at 569. The Second Circuit agreed. Id. In reviewing the statute's legislative

---

[1] At oral argument, this Court expressed concern that the superseding indictment had charged Alhababi under the wrong statute – § 894 rather than § 892. The United States has offered no substantive response.

history, Judge Pratt quoted the only recorded legislative statement of a Member of Congress specifically referencing the "other criminal means" language:

> I want to make it clear that the term "other criminal means" as used in this statute is intended by its authors to have a liberal construction in order that we can take care of the *situations which involve forcing other people to do criminal activity under threat of collection of debt*. The use of force, express or implied, is not the sole test of an extortionate extension of credit. This is an important part of the statute.

Id. at 571 (quoting See 114 Cong. Rec. at 14391 (1968)) (emphasis added).  The Second Circuit elaborated:

> Our review of the legislative history convinces us that congress was concerned primarily with the use of actual and threatened violence by members of organized crime engaged in loan sharking and that it did not intend to authorize a federal 20 year punishment for every creditor who violated some other state or federal criminal statute in the process of making or collecting a usurious loan. In our view, the term "other criminal means" was meant to supplement the context of "violence" so as to punish those who forced their non-paying victims into committing crimes. We do not now attempt to ascertain the precise limits of the statute, for it is sufficient to conclude that Pacione's activities in preparing and threatening to record a deed and mortgage that recited false considerations, and in actually recording the deed, are beyond those limits and therefore not included within the activities congress meant to proscribe. Cf. Perez v. United States, 402 U.S. 146, 152-53, 91 S.Ct. 1357, 1360-61, 28 L. Ed.2d 686 (1971).

> Our narrow interpretation is consistent with that previously given the statute in this and other courts. Certainly, the emphasis of the vast majority of prosecutions instituted under the statute is on the use of, or explicit or implicit threat to use, violence to instill fear in the victim.

Pacione, 738 F.2d at 571-72; see also Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Assoc., 873 F.2d 1401, 1405 (11th Cir. 1989) (holding that conduct did not constitute "other criminal means" where is did not involve "anything akin to violent collection means"); Oak Rubber Co. v. Bank One, N.A., 214 F. Supp. 2d 820, 829 (N.D. Ohio 2002) ("[T]he legislative history of § 894 does

not allow for an interpretation of the statute that criminalizes the use of invalid liens in the demand of repayment of debt.").  In United States v. Natale, 526 F.2d 1160 (2d Cir. 1975), the Second Circuit similarly stated that

> [a]cts or statements constitute a threat under 18 U.S.C. § 891(7) "if they instill fear in the person to whom they are directed or are reasonably calculated to do so in light of the surrounding circumstances . . . ."  It is this "calculated" use of threatening gestures or words to collect credit extensions which Congress has made criminal.

Id. at 1168 (internal citation omitted).

The act of taking an individual's immigration and travel documents as security on a loan is not the type of extortionate act to which § 894(a)(1) was intended to apply.  Individuals commonly provide their licenses, passports, and other similar documents as security in transactions.  For instance, movie theaters accept licenses and other forms of identification when lending headsets to the hearing impaired, as do municipal golf courses and bowling alleys when lending golf carts and other equipment to patrons.  Such arrangements are not extortionate.

Particularly insightful on this score is United States v. Allen, 127 F.3d 260 (2d Cir. 1997), a case involving the extortionate extension of credit statute, 18 U.S.C. § 892.  In Allen, the Second Circuit found that the lender's retention of "sufficient collateral" for a loan in the form of a gold chain was one fact that served to *negate* any plausible inference that the lender would use extortionate means to *collect* on the loan.  Id. at 270.

Upon concluding that it was clear from caselaw that Alhababi had been charged with a non-offense, his attorney promptly brought the overwhelming weight of legal authority to the attention of the United States.  In response, "the government made clear its theory that Mr. Alhababi collected payment on Kramer's loans and forwarded payment to Kramer.  The government has also made clear its theory

that Mr. Alhababi did not use force or the threat of force to collect payment. Rather, it is the government's belief that Mr. Alhababi was aware that Kramer possessed the debtor's travel documents, immigration or identification papers, or leases as collateral and that this possession rendered the loan extortionate." Alhababi Mem., Dec. 19, 2006, at 7. Alhababi's attorney asked the United States to provide legal support for its position, and the Government provided two cases, one of which was United States v. Abrams, 427 F.2d 86 (2d Cir. 1970). In Abrams, the Second Circuit held that an attorney who had retained his client's alien registration certificate for more than three years could be convicted of aiding and abetting a violation of 8 U.S.C. § 1304(e), which requires that "[e]very alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him." The Second Circuit held that the statute was not unconstitutionally vague as applied to the attorney-defendant because he "was on notice that such retention was illegal. In fact he was specifically instructed by an agent of the INS to return the forms to his clients." Abrams, 427 F.2d at 91. It is unclear to this Court how Abrams, upholding a conviction under a statute that carried a maximum $100 fine and 30-day prison term, could support a criminal prosecution under a wholly separate extortion statute that carries a 20-year maximum prison term. The Second Circuit clearly held in Pacione that "other criminal means" for purposes of the extortionate credit statutes is not the equivalent of "any criminal means" or "all criminal means." Pacione, 738 F.2d at 569.

The United States's legal position being clearly out of touch with relevant caselaw, Alhababi brought the pending motion to dismiss on December 19, 2006. In addressing Alhababi's legal contentions, the United States responded in entirety as follows:

> [T]he defendants had no right to possess official travel documents and
> green cards issued to another and as such had no plans to seek recourse

through the courts or other legitimate means to obtain repayment. Further, by withholding these documents the defendants and their fellow conspirators hampered the debtors' ability to travel or seek employment if necessary, thus risking harm to the person or property of those debtors. Thus, as noted above, a factual issue exists which must be resolved by a jury.

United States Mem., Feb. 9, 2007, at 9. The United States cited no legal authority to support its position. No such authority exists.

At oral argument, the Court asked for clarification, and the United States responded as follows:

There are two issues here, Your Honor. One, is that is not the sole extent of the government's claim with respect to the extortion. Again, it is our position that withholding documents and injuring a person's well-being is also a basis for extortion. He's not claiming he didn't know that was not going on. More significantly, with respect to the conspiracy charge, the defendant doesn't have to know everything that every conspirator is doing, he simply has to know generally that they are involved in a business that involves extortion.

Oral Arg., Apr. 10, 2007, at 32:7-16. The United States again cited no legal authority in support of this statement, which runs counter to clear Second Circuit precedent – <u>Pacione</u> and <u>Scotti</u>, see *supra*. The Court, though inclined at that point to dismiss the charges against Alhababi, outlined its concerns on the record and requested additional briefing from the parties. The United Stated responded on May 30, 2007, with a 240-word letter that cites no caselaw and fails to address the issues raised by the Court at oral argument.

Federal Rule of Criminal Procedure 12(b)(2) permits a criminal defendant to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial of the general issue." A court faced with a motion to dismiss must ask, first, whether the indictment states an offense, and second, whether the indictment is sufficiently specific to provide notice and allow the defendant to plead double jeopardy in a subsequent case. <u>See</u> <u>United States v. Garcia</u>, 760 F. Supp. 252, 258

(E.D.N.Y. 1991). Here, the overt acts contained within the superseding indictment are non-offenses with regard to Alhababi. The superseding indictment alleges that Alhababi was aware that another individual, Kramer, was holding passports and travel documents as security on loans on which Alhababi made collections. There is not the slightest suggestion in the superseding indictment or in any of the United States's responses to defense counsel or this Court that Alhababi took part in or conspired to take part in any effort to collect debt by force or threats of violence. At every turn, with respect to Alhababi, the United States has pointed singularly and exclusively to Alhababi's knowledge that Kramer held the travel documents and passports of debtors on loans that Alhababi participated in trying to collect on without resort to extortionate threats – or, from the United States's perspective, extortionate threats additional to the holding of documents. Assuming the proof at trial comports with what the superseding indictment charges and the United States has represented, it would very clearly be insufficient to constitute a crime under 18 § 894(a)(1) or 18 U.S.C. § 371.[2] Accordingly, all charges against Alhababi, as alleged in Counts Five and Six of the superseding indictment returned on September 29, 2006, are dismissed. The defendant is discharged.

      **SO ORDERED.**

Dated:  Brooklyn, New York
        August 15, 2007

                                    / s / Eric N. Vitaliano
                                    ERIC N. VITALIANO
                                    United States District Judge

---

[2] The Court notes that the charge under the general conspiracy statute, 18 U.S.C. § 371, was superfluous, given that the 18 U.S.C. § 894(a) criminalizes the underlying offense as well as the conspiracy to commit the underlying offense. See United States v. Smith, 464 F.2d 1129, 1134 (2d Cir. 1972); United States v. Papia, 399 F. Supp. 1381, 1385 (E.D. Wis. 1975).